UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE DECOR GROUP, INC., a Texas corporation, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO. |
| | ) | |
| RIVER CITY LIGHTS, INC., an Oregon corporation; and GENEVIVE [sic] DIEHL, an individual, | ) ) ) | 3:23-CV-0545-G |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant Genevieve Diehl's ("Diehl") motion to dismiss the plaintiff The Decor Group, Inc.'s (the "plaintiff" or "TDG") claims pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* Defendant Genevieve Diehl's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Regarding All Claims Made Against Her Individually ("Motion") (docket entry 7).

For the reasons stated below, Diehl's motion is **GRANTED**, with leave to TDG to amend its complaint.

## I. BACKGROUND

This case arises out of a contract that TDG alleges it mistakenly entered with the defendant River City Lights, Inc. ("RCL") (collectively with Diehl, the "defendants").  *See* Plaintiff's Original Complaint for Declaratory Relief and Determination of Intellectual Property Rights, Contract Rescission, and Contract Reformation ("Complaint") (docket entry 1).  Although TDG is a Texas corporation with its principal place of business in Texas, RCL is an Oregon corporation with its principal place of business in Oregon, and Diehl resides in Oregon.  *Id*. at 1.

TDG alleges that it employed Diehl as a sales agent from 2015 until 2021.  *Id*. at 2.  In 2021, TDG avers that Diehl formed RCL and began discussing with it the opportunity for the defendants to work in a product development role for TDG, in addition to Diehl's current sales job.  *Id*.  The parties subsequently agreed to initial terms for the defendants to work in a dual product development and sales role, and TDG sent Diehl initial compensation details in an Excel spreadsheet.  *Id*. at 3.

On or around January 26, 2022, Diehl sent Blake Smith ("Smith"), TDG's principal, "a unilaterally drafted [Proposed] 'Consulting Agreement' ('PCA') . . . with proposed terms for product development and compensation between [TDG] and RCL."  *Id*.  Along with these financial terms, "the PCA included terms granting RCL

ownership over any intellectual property resulting from product development projects funded by [TDG], and granted [TDG] a license to use the intellectual property during the term of the PCA." *Id.*

TDG contends that on the same day that Diehl sent the PCA, Smith "unequivocally rejected" the PCA because it would force TDG to pay for product development and give RCL intellectual property ("IP") ownership. Complaint at 3. Smith then informed Diehl that he was agreeing to the financial terms which Diehl included in the PCA, but that he requested Diehl send him a new PCA that did not include the IP terms. *Id.* TDG alleges that although Diehl never sent Smith a new PCA, the parties began working with each other in February 2022 and TDG "compensated RCL pursuant to the Financial Terms agreed upon by the parties." *Id.*

TDG contends that on or around July 1, 2022, Diehl contacted Kevin Wilham ("Wilham"), who at that time was serving as TDG's chief financial officer, requesting a copy of the signed PCA. *Id.* TDG alleges that "[w]ithout authorization and under the mistaken belief" that Smith had approved the IP terms, Wilham signed a draft of the PCA that included the allegedly disputed IP terms and sent it to Diehl. *Id.* at 3-4. Diehl then signed the PCA, returned it to Wilham, and asked him to put the finalized PCA in her employee file. *Id.* at 4.

TDG avers that during an end-of-the-year audit, its new CFO discovered the signed PCA and informed Smith. Complaint at 4. Smith then "confronted" Diehl

and "reminded her that he never agreed to the IP Terms." *Id*. Diehl responded by

informing Smith that "she believed the PCA is a mutually agreed contract." *Id*. TDG

subsequently sent Diehl a letter informing Diehl that the PCA is invalid, at which

point the defendants responded by saying:

> [TDG] has elected to terminate the only agreement
> providing [TDG] a license to the products and their
> designs.  [TDG] will be putting [RCL] in a position to be
> forced to file for an injunction to prevent the shipment and
> sale of the products this year . . . This letter is providing
> formal notice that by doing so, [TDG] will be engaging in
> willful infringement and misconduct.

*Id*. (emphasis omitted).

On March 10, 2023, TDG filed its complaint, asserting that this court has

diversity jurisdiction and asking the court to:  (1) declare, under the Federal

Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201 and 2202, that RCL and

Diehl possess no intellectual property rights under the PCA; (2) issue an order, under

the DJA, rescinding the PCA; and (3) reform the contract and excuse TDG from the

IP terms included in the PCA.  Complaint at 1, 4-7.[1]  On April 3, 2023, Diehl filed

her motion to dismiss TDG's claims against her individually, arguing that:  (1) under

---

[1]     On April 3, 2023, the defendants collectively filed their answer to
TDG's complaint.  *See* Defendants' Original Answer and Counterclaim (docket entry
9).  Attached to the defendants' collective answer, RCL separately asserted its own
counterclaim against TDG, stating a claim for breach of contract because, given
TDG's actions, RCL believes TDG has no intention of fulfilling its obligations under
the PCA.  *Id*. at 6-7.

Federal Rule of Civil Procedure 12(b)(2), the court lacks personal jurisdiction over her because she has neither purposefully availed herself of the benefits of Texas law nor has sufficient minimum contacts with Texas; and (2) under Federal Rule of Civil Procedure 12(b)(6), TDG has failed to state a claim for relief because it has pleaded no facts demonstrating Diehl has any liability in her individual capacity. Motion at 1-2.

On April 28, 2023, TDG filed its response to Diehl's motion, arguing that the court should deny the motion because: (1) Diehl's employment with TDG and later actions, including fraudulently inducing TDG to sign the PCA, establish that this court has personal jurisdiction and that jurisdiction in Texas is not unfair; and (2) TDG has pled enough facts to state a claim for relief against Diehl. Plaintiff, The Decor Group, Inc.'s Opposition to Defendant Genevieve Diehl's Motion to Dismiss for Lack of Personal Jurisdiction and 12(B)(6) Motion to Dismiss for Failure to State a Claim for All Claims Made Against Her Individually ("Response") (docket entry 12) at 5-9. Alternatively, TDG asks the court for leave to amend its complaint should the court grant Diehl's motion to dismiss. *Id.* at 9. On May 12, 2023, Diehl filed her reply and attached two exhibits in support. *See* Defendant Genevieve Diehl's Reply to Plaintiff's Opposition to Her Motion to Dismiss for Lack of Personal Jurisdiction and Her 12(B)(6) Motion to Dismiss ("Reply") (docket entry 13); Exhibits A and B, *attached to* Reply as Exhibits A and B.

- 5 -

## II. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

#### 1. *Rule 12(b)(2) Standard*

##### a. The Factual Standard: *Prima Facie* Case

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff can meet its burden by presenting a *prima facie* case for personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994) (citation omitted). The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff. *Id*. (citation omitted). In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Stuart*, 772 F.2d at 1192. The court is not required to accept as true conclusory allegations, even if uncontroverted, in its *prima-facie*-case analysis. *Panda Brandywine Corporation v. Potomac Electric Power Company*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

- 6 -

b. Legal Requirements

A federal district court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction. *Id.* Texas's long-arm statute confers jurisdiction to the limits of the federal constitution. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). The court, therefore, need only concern itself with the federal due process inquiry. *Id.*

c. Due Process Requirements

Due process requires the satisfaction of three elements to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the forum state's courts; (2) the claim must arise out of or be related to those activities; and (3) it must be fair or reasonable to require the nonresident to defend the suit in the forum state.

*Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.) (citation omitted), *cert. denied*, 548 U.S. 904 (2006); see also *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985).  The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign[.]"  *Burger King*, 471 U.S. at 472 (quotation omitted).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws."  *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement.  *Hanson*, 357 U.S. at 253. In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on the defendant's presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum.  *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant:  specific jurisdiction and general jurisdiction.  *Bristol-Myers Squibb Company v. Superior Court of California*, 582 U.S. 255, 262 (2017).  Specific jurisdiction exists if the cause of action "arises from or relates to the defendant's

contact with the forum state." *Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (internal quotation marks and citations omitted).  General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "so continuous and systematic as to render [the nonresident] essentially at home in the forum [s]tate." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and citations omitted).

Under either a specific or general jurisdiction analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (citation omitted).  The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the unilateral activity of another party or a third person." *Id*. at 475 (internal quotation marks and citations omitted).  A plaintiff must establish a substantial connection between the nonresident defendant and the forum state.  *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992).

A court must consider all factors when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative." *Stuart*, 772 F.2d at 1192.  "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical

- 9 -

and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

### 2. *Application*[2]

Diehl contends that this court lacks personal jurisdiction over her because she resides in Oregon and "has not purposefully availed herself of the benefits of having a meaningful connection to the forum State of Texas, and, therefore, does not have the requisite minimum contacts with the forum state to warrant the association for such jurisdiction." Motion at 1-2. Specific jurisdiction exists over a non-resident

---

[2] It appears that TDG only asserts that the court has specific jurisdiction over Diehl. Response at 5-7. On the present record, the court also concludes that it does not have general jurisdiction. To make a *prima facie* case that a court has general jurisdiction over a nonresident defendant, a plaintiff must prove that the defendant's contacts with the forum state are "so continuous and systematic as to render [the defendant] essentially at home" in the state. *Monkton Insurance Services, Limited v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler*, 571 U.S. at 139). Essentially, in its complaint, TDG pleads that Diehl has had three "contacts" with Texas: (1) Diehl previously worked for TDG; (2) Diehl negotiated a contract with TDG on behalf of RCL; and (3) Diehl signed a contract with TDG on behalf of RCL. Complaint at 2-4. Taken together, these contacts are not so continuous and systematic as to make Diehl at home in Texas, and, therefore, the court does not have general jurisdiction over her. See *Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 447-49 (1952) (concluding that the court did have general jurisdiction because Ohio had essentially become the foreign corporation's temporary principal place of business); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-19 (1984) (finding that the court did not have general jurisdiction even where the nonresident defendant negotiated a contract in Texas, purchased helicopters from Texas, trained personnel in Texas, and had monetary transactions involving a Texas bank).

defendant if that defendant's contacts are related to the cause of action.  *Stripling*,
234 F.3d at 871.  "When a court exercises personal jurisdiction over a defendant
based on contacts with the forum related to the particular controversy, the court is
exercising 'specific jurisdiction.'"  *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773,
777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987).  A
defendant's contacts with the forum that are unrelated to the underlying controversy
cannot support a finding of specific jurisdiction.  *Bristol-Myers Squibb Company*, 582
U.S. at 264 ("[A] corporation's 'continuous activity of some sorts within a state . . . is
not enough to support the demand that the corporation be amenable to suits
unrelated to that activity.") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915, 927 (2011)).

Here, Diehl argues that the court lacks personal jurisdiction over her because
she resides in Oregon and has not "purposely availed herself of the benefits and
protections of the State of Texas by having the necessary minimum contacts with this
state."  Defendant Genevieve Diehl's Brief in Support of Her Rule 12(b)(2) Motion
to Dismiss for Lack of Personal Jurisdiction and Rule 12(b)(6) Motion to Dismiss for
Failure to State a Claim for All Claims Made Against Her Individually ("Brief in
Support") (docket entry 8) at 1-2.  Specifically, Diehl avers that TDG only pleads in
its complaint that she resides in Oregon, has worked for RCL since 2015, and has
minimum contacts with Texas because of her residence and the business that she has

conducted in Texas, on behalf of RCL, by selling products or offering services in Texas. *Id*. Diehl contends, therefore, that TDG has insufficiently alleged that this court has personal jurisdiction because "these allegations are insufficient to establish Diehl's having minimum contacts with the forum jurisdiction[] in her sole capacity as an employee of a foreign corporation." *Id*.

Diehl also avers that the "fiduciary shield doctrine" prevents the court from having personal jurisdiction over her, absent certain exceptions, based solely on her actions as a corporate officer on behalf of RCL, and that TDG has not pled any facts indicating that one of these exceptions exists. Brief in Support at 2-3. Additionally, Diehl contends that the court cannot assert personal jurisdiction over her based solely on her communication directed towards Texas. *Id*. As such, Diehl asserts that TDG has failed to make a *prima facie* case that this court has personal jurisdiction over her.

In its response, TDG argues that the court has personal jurisdiction over Diehl because Diehl has had three different contacts with Texas that relate to her employment and the disputed contract, those contacts relate to this lawsuit, and the court asserting personal jurisdiction over Diehl would not be unfair, difficult, or inconvenient. Response at 5-8. First, TDG contends that Diehl "misstates facts and misquotes" its complaint, as TDG's complaint states that it employed Diehl, in her individual capacity, from about 2015 through 2021, and, therefore, Diehl has had

individual connections with Texas and the fiduciary shield doctrine does not apply. *Id*. at 5-6.  Through her sales job, Diehl "has availed herself to do business in the forum state by being an employee of a Texas entity and providing services to residents of Texas." *Id*. at 6.

Second, TDG argues that in 2021, Diehl, on behalf of RCL, reached out to, negotiated with, and "agreed to the financial terms and continued to do business" with TDG.  Response at 6.  Although TDG disputes the authenticity of the contract that Diehl and Wilham signed, during this time period, Diehl provided services and TDG paid Diehl.  *Id*.  Third, TDG asserts that this court has personal jurisdiction over Diehl based on her fraudulently inducing Wilham to sign the PCA.  *Id*.  TDG contends that "when a claim based on fraud committed against a resident of the forum state is directly related to the activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state."  *Id*. at 7.  Consequently, TDG argues, this court has specific jurisdiction because its argument that the court should rescind the PCA "directly arises from Diehl's conduct communicating with [a] Texas corporation, and fraudulently inducing its CFO to actively seek a copy of a signed contract, which Diehl knew to be rejected, and have the CFO 'resign' in order to enforce the terms on TDG."  *Id*.

The court agrees with Diehl that she does not have sufficient contacts with Texas that are related to this cause of action for the court to assert specific jurisdiction over her.  First, any employment-relationship that Diehl has had individually with TDG cannot support a finding of specific jurisdiction.  A non-resident defendant's contact with the forum state must be related to the cause of action for a court to assert specific jurisdiction over that person.  See *Stripling*, 234 F.3d at 871.  Here, TDG's cause of action relates to the PCA, specifically to whether it is a binding document and clarifying its underlying terms.  Not only is the PCA between just TDG and RCL, *see* Exhibit A at 7, 12, but also, as TDG alleges in its complaint, any employee relationship that Diehl has had individually with TDG has no relationship with the PCA, Complaint at 2-4.  This contact, therefore, cannot support a finding that this court has specific jurisdiction over Diehl.

Second, Diehl's contact with Texas while negotiating and signing the PCA on behalf of RCL cannot be attributed to her individually.  Under the fiduciary shield doctrine, it is well settled that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation[.]" *Stuart*, 772 F.2d at 1197.  In this case, Diehl's contact with Texas while negotiating and signing the PCA was on behalf of RCL.  *See* Complaint at 2-4.  Thus, any contacts that RCL had with Texas while negotiating and signing the PCA may not be

imputed to Diehl individually to create jurisdiction over her. Also, any activities that Diehl conducted while performing her duties for RCL are not relevant and should not be considered as grounds for imposing jurisdiction over her in Texas.

Although the Fifth Circuit has recognized two exceptions to the fiduciary shield doctrine, neither apply in this case. First, a district court may disregard the corporate form and exercise jurisdiction over an individual officer if the corporation is the officer's "alter ego." *Stuart*, 772 F.2d at 1197; *Construction Aggregates, Inc. v. Senior Commodity Company, S.A.M.*, 860 F. Supp. 1176, 1179 (E.D. Tex. 1994), *aff'd*, 48 F.3d 531 (5th Cir. 1995). In such cases, the exercise of jurisdiction is predicated on the practical identity of the officer and his corporate shell. See *Stuart*, 772 F.2d at 1197. In this case, TDG has not alleged any facts related to an alter ego theory, nor does the court find evidence that Diehl and RCL are unified parties. *See* Complaint. The alter ego exception, therefore, does not apply.

Second, the court may exercise personal jurisdiction over an officer who allegedly committed an intentional tort directed at the forum state. See *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 548 (5th Cir. 1985) (jurisdiction proper because fraud and breach of contract alleged); *Union Carbide Corporation v. UGI Corporation*, 731 F.2d 1186, 1189-90 (5th Cir. 1984) (jurisdiction proper because tortious interference with contract alleged). As explained by United States District Judge Howell Cobb of the Eastern District of Texas,

"[w]hen officers or agents direct purposeful, tortious activity towards a particular forum, they should anticipate being haled into court in that forum." *Intermed Laboratories, Inc. v. Perbadanan Geta Felda*, 898 F. Supp. 417, 420 (E.D. Tex. 1995).

Although TDG alleges in its response that Diehl committed fraud, this contention is not properly before the court. Generally, allegations raised for the first time in response to a dispositive motion are not properly before the court. *Fisher v. Metropolitan Life Insurance Company*, 895 F.2d 1073, 1078 (5th Cir. 1990). Here, TDG argues, for the first time in its response to Diehl's motion to dismiss, that Diehl fraudulently induced Wilham into signing the PCA. Response at 6-7. In TDG's complaint, on the other hand, it contends that Wilham signed the PCA "under the mistaken belief [TDG] had approved the PCA[,]" omitting any mention that Diehl committed fraud. Complaint at 3-4. The court, therefore, will not consider TDG's new fraud allegation because TDG only raised it in response to Diehl's motion to dismiss. As TDG's new fraud allegation is the only contention that Diehl, individually, committed an intentional tort directed at Texas, the second exception to the fiduciary shield doctrine does not apply.

Moreover, even if the fiduciary shield doctrine does not apply, the Fifth Circuit has indicated that a contract alone is not sufficient to confer personal jurisdiction. *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985). This is true even when there has been "extensive communication[]" between the parties.

*Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1028-29 (5th Cir. 1983), *cert. denied*, 466 U.S. 962 (1984). Diehl's contact with Texas related to the PCA, therefore, does not alone confer personal jurisdiction because it only relates to a contract and communications made concerning it.

As such, TDG has failed to demonstrate a *prima facie* case that this court has personal jurisdiction over Diehl because she does not have sufficient minimum contacts that relate to this cause of action. Diehl's motion to dismiss TDG's claims against her for lack of personal jurisdiction, therefore, is granted.

### B. Motion to Dismiss for Failure to State a Claim

#### 1. *Rule 12(b)(6) Standard*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that

all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*. (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id*. The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id*. at 678.

The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 665 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in

original) (quoting FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" its claims against the defendants "across the line from conceivable to plausible."  See *id.* at 679-80.

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).  If the plaintiff, however, fails to attach documents referred to in the complaint, the defendant may attach the documents to her motion to dismiss if the documents are "referred to in the plaintiff's complaint and are central to her claim."  *Id*. at 498-99 (internal quotation omitted).

### 2.  *Application*

Even if this court does have personal jurisdiction over Diehl, Diehl moves to dismiss TDG's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief because TDG fails to allege sufficient facts demonstrating that Diehl, in her individual capacity, is liable for any of the three claims that TDG asserts.  Motion at 2.  "Federal courts apply state substantive law when adjudicating diversity-jurisdiction claims[.]"  *Hall v. GE Plastic Pacific PTE Limited*, 327 F.3d 391, 395 (5th Cir. 2003) (quotation omitted).  Under Texas law, there is a clear distinction between individual liability and corporate liability.  *Maxey v. Citizens*

- 19 -

*National Bank*, 507 S.W.2d 722, 725-26 (Tex. 1974).  Generally, with limited

exception, the owner of a corporation may not be held individually liable for matters

arising out of the corporation's contractual obligations.  *See* TEX. BUS. ORGS. CODE

§ 21.223.

Here, Diehl argues that TDG fails to allege any facts in its complaint that,

even if assumed to be true, would demonstrate that Diehl is individually liable for

any of the three claims that TDG asserts.  Brief in Support at 4-5.  Diehl avers that

the PCA is between TDG and RCL, and that she cannot be held individually

responsible for issues arising out of a contract that she is not individually a party to.

*Id*.  Thus, even if all the allegations in TDG's complaint are assumed to be true, TDG

fails to state a claim for relief against Diehl because TDG's claims arise from a

contract with RCL, not Diehl.  *Id*. at 5-6.

TDG responds with several disorganized arguments as to why its complaint

alleges sufficient facts to state a claim for relief against Diehl in her individual

capacity.  Response at 8-9.  First, TDG avers that it was not just itself and RCL that

entered into the PCA, but rather Diehl was also an employee at TDG for six years,

"the parties discussed and agreed to a part time product development/sales position

with a compensation arrangement for products developed by the Defendants[,]" and

TDG and RCL never finalized a contract because of disagreement regarding the IP

terms.  *Id*. (internal quotation marks omitted).  Second, TDG avers that "Diehl in her

personal capacity misrepresented that an agreement was reached between RCL and [p]laintiff to [Wilham] . . . and [Wilham] signed and provided a copy to Defendant." *Id*. at 9.  Finally, TDG alleges that its complaint seeks a determination from the court that both RCL and Diehl, in her individual capacity, have no rights to the intellectual property that was created during the parties' relationship.  *Id.*

The court agrees with Diehl that TDG has failed to allege sufficient facts to state a claim for relief against Diehl in her personal capacity.  TDG's claims all relate to and arise from the PCA.  TDG argues in its response that Diehl is included in the PCA and that, regardless, that parties never reached agreement.  Response at 8-9.  In her reply, however, Diehl attached a signed copy of the PCA which clearly shows that the agreement is between TDG and RCL and that Wilham, on behalf of TDG, and Diehl, on behalf of RCL, signed the agreement.  Exhibit A at 7, 12.  Diehl, therefore, is not a party to the disputed contract in her individual capacity.

Furthermore, whether Diehl worked for TDG in her individual capacity before RCL entered the PCA with TDG is irrelevant, as TDG's claims arise only from facts relating to the PCA, not from Diehl's prior individual work.  *See* Complaint. Moreover, although TDG seeks a judicial determination that Diehl has no rights to the disputed IP based on the PCA, TDG's complaint states that the PCA explicitly granted RCL IP ownership, not Diehl.  *Id*. at 3-5.  Consequently, TDG's own complaint illustrates why it fails to assert sufficient facts to state a claim for relief

against Diehl, as according to TDG's complaint (and the signed PCA that Diehl attaches), any dispute about the PCA involves only TDG and RCL.

Additionally, and as stated above, TDG asserts for the first time in its response that Diehl, in her individual capacity, intentionally misrepresented facts to Wilham and fraudulently induced him into signing the PCA.  Response at 6-7, 9.  This contrasts with TDG's complaint, which states that Wilham was under a "mistaken" belief that TDG had approved the entire PCA and that is why he signed the document with the IP terms included.  Complaint at 3-4.  TDG's complaint omits any mention of misrepresentation or fraud allegations, and, therefore, TDG cannot raise these for the first time in response to Diehl's motion to dismiss.  *Fisher*, 895 F.2d at 1078.

TDG has also not pled any exception to the general rule that Diehl cannot be held individually liable for RCL's actions.  TDG does not allege that Diehl was acting in her own personal interest or contrary to RCL's interests.  See *Maxey*, 507 S.W.2d at 726.  Nor does TDG allege facts that Diehl is liable as an alter ego or that the corporate veil may be pierced.  See *In re Great Southern Life Insurance Company Sales Practices Litigation*, Nos. 3:98-CV-1249-X, 3:98-CV-1617-X, 3:98-CV-1618-X, 3:98-CV-1619-X, 1999 WL 721968, at *4-5 (N.D. Tex. Sept. 15, 1999) (Kendall, J.).  There is no basis for imposing individual liability against Diehl.

Accordingly, because TDG has not alleged sufficient facts to state a claim for relief against Diehl individually, and because Diehl cannot be held personally liable for RCL's obligations, Diehl's motion to dismiss for failure to state a claim is granted.

### C. TDG's Request for Leave to Amend

In TDG's response, it seeks leave to amend its complaint should the court grant Diehl's motions to dismiss. Response at 9. Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a). Whether a motion to amend should be granted is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). When exercising its discretion, the court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Id*. The Fifth Circuit has stated, however, that "'discretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom" to deny leave to amend. *Dussouy v. Gulf Coast Investment Corporation*, 660 F.2d 594, 597 (5th Cir. 1981). Rule 15(a) "evinces a bias in favor of granting leave to amend." *Id*.

This is TDG's first request for leave to amend its complaint. It has thus not repeatedly failed to cure deficiencies by previous amendments. More importantly,

- 23 -

there is no suggestion that TDG seeks leave to amend in bad faith or for the purpose of undue delay. Rather, TDG seeks leave to amend its complaint in order to correct deficiencies in its original complaint, specifically to assert that this court has personal jurisdiction over Diehl and to allege sufficient facts to state a claim for relief against Diehl in her personal capacity. The defendants offer no reason why TDG should not be allowed to amend its complaint. TDG's request for leave to amend its complaint, therefore, is granted. Any such amended complaint must be filed and served by July 7, 2023.

### III.  CONCLUSION

For the reasons stated above, Diehl's motion to dismiss is **GRANTED**, but TDG is given leave to amend its complaint, provided that any such amended complaint is filed and served by July 7, 2023.

**SO ORDERED**.

June 20, 2023.

_____
**A. JOE FISH**
**Senior United States District Judge**

- 24 -