UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE DECOR GROUP, INC., a Texas corporation, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:23-CV-0545-G |
| RIVER CITY LIGHTS, INC., an Oregon corporation, | ) ) ) | |
| Defendant/Counter-Plaintiff. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant River City Lights, Inc.,

("RCL") to strike the plaintiff's amended complaint (docket entry 16).  The court

construes the motion as a motion to strike the plaintiff's claims against Genevieve

Diehl ("Diehl"), a defendant previously dismissed from this action.  So construed, the

motion is **GRANTED**.

## I.  BACKGROUND

On March 10, 2023, the plaintiff The Decor Group, Inc. ("TDG") filed this

action against RCL and Diehl.  *See* Plaintiff's Original Complaint for Declaratory

Relief and Determination of Intellectual Property Rights, Contract Rescission, and

Contract Reformation (docket entry 1).  A full recitation of the factual background of this case is provided in the court's memorandum opinion and order issued on June 20, 2023.  *See* Memorandum Opinion and Order ("Memorandum Opinion") (docket entry 14).  In that order, the court granted Diehl's motion to dismiss TDG's claims against her for lack of personal jurisdiction and for failure to state a claim on which relief could be granted but granted TDG leave to correct deficiencies in its original complaint, specifically to assert that this court has personal jurisdiction over Diehl and to allege sufficient facts to state a claim for relief against Diehl in her personal capacity.  See generally *id.*

On July 8, 2023,TDG amended its complaint, asserting claims against RCL and against Diehl as RCL's alter ego.  *See generally* Plaintiff's Amended Complaint for Declaratory Relief and Determination of Intellectual Property Rights, Contract Rescission, and Contract Reformation ("Amended Complaint") (docket entry 15).

RCL asserts once more that this court lacks personal jurisdiction over Diehl.[1] RCL moves to strike TDG's amended complaint because TDG "fails to plead the facts necessary to assert a valid claim of alter ego which is necessary in order to provide Plaintiff with a viable basis for this Court's having personal jurisdiction over

---

[1]    RCL states that "Diehl does not join with RCL in connection with urging this Motion" as "Diehl was dismissed from this case as a Defendant . . . ." Motion at 1 n.1.  She does, however, join RCL in reply to TDG's response to the motion.  *See generally* Defendants' Reply to Plaintiff's Opposition to Defendant's Motion to Strike Amended Complaint (docket entry 19).

Ms. Diehl." Defendant's Motion to Strike Plaintiff's Amended Complaint

("Motion") at 1. The court construes the motion as a motion to strike TDG's claims

against Diehl.

## II.  ANALYSIS

### A.  Personal Jurisdiction

#### 1.  *Legal Standard*

As stated in this court's previous memorandum opinion and order, "[w]hen a

nonresident defendant presents a motion to dismiss for lack of personal jurisdiction,

the plaintiff bears the burden of establishing the district court's jurisdiction over the

nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). If the

district court chooses to decide the matter without an evidentiary hearing, the

plaintiff can meet its burden by presenting a *prima facie* case for personal jurisdiction.

*Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994)

(citation omitted). The court will take the allegations of the complaint as true,

except where they are controverted by opposing affidavits, and all conflicts in the

facts are resolved in favor of the plaintiff. *Id*. In making its determination, the court

may consider affidavits, interrogatories, depositions, oral testimony, or any

combination of recognized discovery methods. *Stuart*, 772 F.2d at 1192. The court

is not required to accept as true conclusory allegations, even if uncontroverted, in its

*prima-facie*-case analysis. *Panda Brandywine Corporation v. Potomac Electric Power*

*Company*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

A federal district court may exercise personal jurisdiction over a nonresident

defendant if:  (1) the long-arm statute of the forum state permits the exercise of

personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by

the forum state is consistent with due process under the United States Constitution.

*Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  A defendant is amenable to the

personal jurisdiction of a federal court sitting in diversity to the same extent that it

would be amenable to the jurisdiction of a state court in the same forum.  *Pedelahore*

*v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984).  Applying state law, this court

must first determine whether Texas, the forum state, could assert long-arm

jurisdiction.  *Id*.  Texas's long-arm statute confers jurisdiction to the limits of the

federal constitution.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).  The

court, therefore, need only concern itself with the federal due process inquiry.  *Id*.

### 2.  *Due Process Requirements*

Due process requires the satisfaction of three elements to exercise personal

jurisdiction over a nonresident defendant:  (1) the nonresident must have some

minimum contact with the forum that results from an affirmative act on its part such

that the nonresident defendant could anticipate being haled into the courts of the

forum state; (2) the claim must arise out of or be related to those activities; and (3) it

must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.), *cert. denied*, 548 U.S. 904 (2006); see also *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985). The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign[.]" *Burger King*, 471 U.S. at 472 (internal quotation omitted).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *Hanson*, 357 U.S. at 253. In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on the defendant's presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. *Bristol-Myers Squibb Company v. Superior Court of California*, 582 U.S. 255, 262 (2017). Specific

- 5 -

jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (internal quotations and citations omitted).  General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "so continuous and systematic as to render [the nonresident] essentially at home in the forum [s]tate." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations and citations omitted).

Under either a specific or general jurisdiction analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (citation omitted).  The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the unilateral activity of another party or a third person." *Id*. at 475 (internal quotation and citations omitted).  A plaintiff must establish a substantial connection between the nonresident defendant and the forum state.  *Jones v. Petty-Ray Geophysical, Geosource, Inc*., 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992).

A court must consider all factors when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative."

*Stuart*, 772 F.2d at 1192.  "[W]hether the minimum contacts are sufficient to justify

subjection of the non-resident to suit in the forum is determined not on a mechanical

and quantitative test, but rather under the particular facts upon the quality and

nature of the activity with relation to the forum state."  *Mississippi Interstate Express,*

*Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

## B. Application[2]

RCL contends that this court should follow its previous memorandum opinion

and order, where the court agreed with Diehl that there was neither specific nor

---

[2]     As noted in this court's previous memorandum opinion and order, it appears that TDG only asserts that the court has specific jurisdiction over Diehl. Plaintiff, The Decor Group, Inc.'s Opposition to Defendants [sic] Motion to Strike Plaintiff's Amended Complaint at 4-8 ("Opposing Response") (docket entry 18).  On the present record, the court also concludes that it does not have general jurisdiction. To make a *prima facie* case that a court has general jurisdiction over a nonresident defendant, a plaintiff must prove that the defendant's contacts with the forum state are "so continuous and systematic as to render [the defendant] essentially at home" in the state.  *Monkton Insurance Services, Limited v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler*, 571 U.S. at 139).  Essentially, in its amended complaint, TDG pleads that Diehl has had three "contacts" with Texas:  (1) Diehl previously worked for TDG; (2) Diehl negotiated a contract with TDG on behalf of RCL; and (3) Diehl signed a contract with TDG on behalf of RCL.  Amended Complaint at 2-5. Taken together, these contacts are not so continuous and systematic as to make Diehl at home in Texas, and, therefore, the court does not have general jurisdiction over her.  See *Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 447-49 (1952) (concluding that the court did have general jurisdiction because Ohio had essentially become the foreign corporation's temporary principal place of business); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-19 (1984) (finding that the court did not have general jurisdiction even where the nonresident defendant negotiated a contract in Texas, purchased helicopters from Texas, trained personnel in Texas, and had monetary transactions involving a Texas bank).

general jurisdiction over her.  *See generally* Memorandum Opinion; *see* Defendant's

Brief in Support of its Motion to Strike Plaintiff's Amended Complaint ("Brief in

Support") (docket entry 17).  RCL specifically avers that TDG's attempt to find an

alternative pathway to jurisdiction through the "alter ego" exception to the "fiduciary

shield doctrine" is improperly supported.  Brief in Support at 2-3.  RCL asserts that

TDG's statements are specifically "threadbare recitals" supported by "mere

conclusory statements" under *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and

therefore do not meet the minimum pleading requirements to find personal

jurisdiction via a *prima facie* showing of an "alter ego" relationship.  Brief in Support

at 3.  RCL instead avers that the fiduciary shield doctrine prevents a finding of

personal jurisdiction as Diehl was solely a corporate officer, a claim that TDG has

failed to properly contradict.  Brief in Support at 3-4.  RCL contends that TDG did

not submit a "controverting Affidavit to provide the court with at least some

evidence" in support of the "alter ego" relationship and therefore, under *Traveler's

Indemnity Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986), *on reh'g in

part*, 836 F.2d 850 (5th Cir. 1988), Diehl's affidavit trumps the allegations made in

the amended complaint.  Reply to Plaintiff's Opposition at 6.

Next, RCL asserts that TDG did not properly bring the second exception, a

claim of an intentional tort directed at the forum state, before the court, as TDG did

not mention it in TDG's claim for relief.  *Id.* at 3.  RCL declines to address TDG's

fraud claim because the plaintiff did not plead fraud.  *Id*. at 4.  Additionally, RCL contends that TDG makes "no effort" to rebut the legal sufficiency of its facts or distinguish its authorities, and, in the alternative, TDG did not logically plead fraud if no such "alter ego" case could be made.  *Id*. at 4-5.  Further, RCL asserts that the cases cited by TDG in support of a finding of personal jurisdiction are readily distinguishable from the case at bar.  *Id*. at 7.  In summation, RCL argues that TDG failed to make amendments to its complaint that support a *prima facie* case against Diehl, and the court should adhere to its previous conclusion that it cannot exercise personal jurisdiction over Diehl.

TDG argues that the court has personal jurisdiction over Diehl because she is excepted from the fiduciary shield doctrine as she is an alter ego of RCL and, in the alternative, that Diehl committed an intentional tort directed at the forum state. Amended Complaint at 5-6; Opposing Response at 6.  First, in its amended complaint, TDG requests relief from Diehl in her personal capacity via the alter ego exception.  *See* Amended Complaint.  Specifically, TDG argues that RCL is a "mere instrumentality" for Diehl and that "there is such a unity of interest in ownership that the separate personalities of the corporation and the owner no longer exist."  *Id*. at 1.

Second, TDG avers that Diehl committed an intentional tort directed at the forum state, thus providing a sufficient "minimum contact" for personal jurisdiction. Opposing Response at 6-8.  TDG contends that:

> [W]hen there is an alleged act of fraud is committed against a resident of the forum state which is directly related to the activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state.

*Id*. at 6.  Consequently, TDG argues, this court has specific jurisdiction because its argument that the court should rescind the Proposed Consulting Agreement ("PCA") "directly arises from Diehl's conduct communicating with [a] Texas corporation, and fraudulently inducing its CFO to actively seek a copy of a signed contract." *Id*. at 7.

The court agrees with RCL that the plaintiff's amended complaint does not allege that Diehl had sufficient contacts with Texas related to this cause of action for the court to assert specific jurisdiction over her.  First, as stated in this court's previous memorandum opinion and order, any employment-relationship that Diehl had individually with TDG cannot support a finding of specific jurisdiction on its own.  Memorandum Opinion at 14.  A nonresident defendant's contact with the forum state must be related to the cause of action for a court to assert specific jurisdiction over that person.  See *Stripling*, 234 F.3d at 871.  Here, TDG's cause of action relates to the PCA, specifically to whether it is a binding document and its underlying terms.  The PCA itself is just between TDG and RCL.  *See* Exhibit A at

7-12.  This contact, therefore, cannot support a finding that this court has specific jurisdiction over Diehl.

Second, the court is not persuaded by TDG's argument that Diehl is not protected under the fiduciary shield doctrine.  *See* Opposing Response.  While it is uncontested that Diehl contacted and negotiated the terms of the PCA, it remains an unsupported conclusion that Diehl was not acting on behalf of RCL exclusively.  In this court's previous memorandum opinion and order, the court stated that personal jurisdiction does not automatically arise from an individual's action solely as a corporate officer of a company, even if that company itself could be haled into the forum.  See *Stuart*, 772 F.2d at 1197.  Diehl's only contact with Texas was negotiating and signing the PCA on behalf of the RCL; thus, it does not automatically follow that this court has specific jurisdiction over her.  *Id*.

Perhaps in recognition of this impasse, TDG argues in its amended complaint that the alter ego exception is applicable to Diehl.  *See generally* Amended Complaint.  While the Fifth Circuit recognizes an "alter ego" exception to the fiduciary shield doctrine, that exception does not apply here.  A district court may disregard the corporate form and exercise jurisdiction over an individual officer if the corporation is the officer's "alter ego."  *Stuart*, 772 F.2d at 1197; *Construction Aggregates, Inc. v. Senior Commodity Company*, 860 F. Supp. 1176, 1179 (E.D. Tex. 1994), *aff'd*, 48 F.3d 531 (5th Cir. 1995).  The exercise of jurisdiction is predicated on the practical identity of

the officer and his corporate shell.  See *Stuart*, 772 F.2d at 1197.  A claim of alter ego is examined according to a "laundry list" of factors based on "the totality of the circumstances." *Century Hotels v. United States*, 952 F.2d 107, 110 (5th Cir. 1992) (citing *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691, 694 (5th Cir. 1985), *cert. denied*, 475 U.S. 1014 (1986)).

In this case, TDG rests the entirety of its alter ego assertion on one sentence: "RCL is a mere instrumentality for the transaction of Diehl's own affairs and there is such a unity of interest in ownership that the separate personalities of the corporation and owner no longer exist." Amended Complaint at 1.  This claim is not developed and is practically abandoned by TDG in its opposition to the defendant's motion. *See generally* Opposing Response.  The court does not accept conclusory allegations as true.  Without additional facts, such as Diehl's control of RCL, the level of financial integration between Diehl and RCL, Diehl's use of RCL's property as her own, Diehl's use of RCL to pay her personal obligations, or other relevant information, TDG fails to plead a *prima facie* case of an "alter ego" relationship between RCL and Diehl.  See *Breckenridge Enterprises, Inc. v. Avio Alternatives, LLC*, No. 3:08-CV-1782-M, 2009 WL 1469808, at *5 (N.D. Tex. May 27, 2009) (Lynn, J.).  On this record, the court cannot find that Diehl and RCL are unified parties.  The alter ego exception, therefore, does not apply.

Third, the court may exercise personal jurisdiction over an officer who allegedly committed an intentional tort directed at the forum state.  See *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 548 (5th Cir. 1985) (jurisdiction proper because fraud and breach of contract alleged); *Union Carbide Corporation v. UGI Corporation*, 731 F.2d 1186, 1189-90 (5th Cir. 1984) (jurisdiction proper because tortious interference with contract alleged).  As explained by Judge Cobb of the Eastern District of Texas, "[w]hen officers or agents direct purposeful, tortious activity towards a particular forum, they should anticipate being haled into court in that forum." *Intermed Laboratories, Inc. v. Perbadanan Geta Felda*, 898 F. Supp. 417, 420 (E.D. Tex. Apr. 27, 1995).

Although TDG alleges in its opposition to RCL's motion that Diehl committed fraud, this contention, for a second time, is not properly before the court.  While the Amended Complaint contains language that could be construed as a claim for fraud, the allegation of fraud was not raised until the plaintiff's response to a motion to strike.  *See generally* Amended Complaint.  For this reason, as in this court's previous memorandum opinion and order, it is not properly before the court.  *Fisher v. Metropolitan Life Insurance Company*, 895 F.2d 1073, 1078 (5th Cir. 1990).  Here, TDG argues, again for the first time in its opposition (but not its complaint), that Diehl fraudulently induced Wilham into signing the PCA.  Opposing Response at 6-7.  TDG's complaint, however, omits the term "fraud" and its elements entirely.

- 13 -

*See* Amended Complaint.  While it avers that misrepresentation and false statements led Wilham to "believe" that the whole of the PCA had been signed, these statements, by themselves, do not organically birth a cause of action of fraud.  *Id*. at 3.

The court, therefore, will not consider TDG's new fraud allegations because they were only raised in response to RCL's motion to strike.  As TDG's new fraud allegation is the only contention that Diehl, individually, committed an intentional tort directed at Texas, the second exception to the fiduciary shield doctrine does not apply.

Returning to this court's previous opinion in this controversy, even if the fiduciary shield doctrine does not apply, it is well-established in the Fifth Circuit that a contract alone is not sufficient to confer personal jurisdiction.  *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985).  This rule applies even when there are "extensive communications" between the parties.  *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1028-29 (5th Cir. 1983), *cert. denied*, 466 U.S. 962 (1984).  Diehl's contact with Texas related to the PCA, therefore, cannot alone confer personal jurisdiction because it only relates to a contract and communications made concerning it.

Consequently, TDG has failed to make a *prima facie* case that this court has personal jurisdiction over Diehl because it has not pleaded facts sufficient to show minimum contacts related to this cause of action.

Because the court has concluded that TDG failed to show that Diehl has sufficient minimum contacts with Texas to allow the court to exercise personal jurisdiction over her, the court need not reach the question of whether the exercise of jurisdiction over Diehl would offend "traditional notions of fair play and substantial justice." *International Shoe Company v. State of Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

### III.  CONCLUSION

For the reasons stated above, RCL's motion to strike TDG's claims against Diehl is **GRANTED**.

**SO ORDERED**.

October 27, 2023.

A. JOE FISH
Senior United States District Judge

- 15 -