IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THE DECOR GROUP, INC., | |
|       Plaintiff, | |
| V. | No. 3:23-cv-545-BN |
| RIVER CITY LIGHTS, INC., and GENEVIVE DIEHL, | |
|       Defendants. | |
| RIVER CITY LIGHTS, INC., | |
|       Counter Claimant, | |
| V. | |
| THE DECOR GROUP, INC., | |
|       Defendant. | |

## MEMORANDUM OPINION AND ORDER

Defendant River City Lights, Inc. ("RCL") has filed a Motion for Partial Summary Judgment. *See* Dkt. No. 36.

Plaintiff The Decor Group, Inc. filed a response, *see* Dkt. No. 40, and RCL filed a reply, *see* Dkt. No. 43.

For the reasons explained below, the Court grants RCL's Motion for Partial Summary Judgment [Dkt. No. 36].

### Background

Prior orders have documented the background of this case. *See* Dkt. Nos. 14 & 20. The information is repeated here for reference and is supplemented with

information relevant to the issues now presented before the Court.

This case arises out of a contract that Decor Group alleges it mistakenly entered with RCL. *See* Dkt. Nos. 1 & 15. Decor Group alleges that it employed Genevieve Diehl as a sales agent from 2015 until 2021. Dkt. No. 15 at 3. In 2021, Decor Group avers that Diehl formed RCL and began discussing with Decor Group the opportunity to work in a product development role for Decor Group, in addition to Diehl's current sales job. *Id.* at 3-4. The parties subsequently agreed to initial terms for RCL and Diehl to work in a dual product development and sales role, and Decor Group sent Diehl initial compensation details in an Excel spreadsheet. *Id.* at 4.

On or around January 26, 2022, Diehl sent Blake Smith, Decor Group's principal, "a unilaterally drafted [Proposed] 'Consulting Agreement' ('PCA') ... with proposed terms for product development and compensation between [Decor Group] and RCL." *Id.* Along with these financial terms, "the PCA included terms granting RCL ownership over any intellectual property resulting from product development projects funded by [Decor Group], and granted [Decor Group] a license to use the intellectual property during the term of the PCA." *Id.*

Decor Group contends that, on the same day that Diehl sent the PCA, Smith "unequivocally rejected" the PCA because it would force Decor Group to pay for product development and give RCL intellectual property ("IP") ownership. *Id.* Smith then informed Diehl that he was agreeing to the financial terms that Diehl included in the PCA but that he requested that Diehl send him a new PCA that did not include the IP terms. *See id.*

Decor Group alleges that, although Diehl never sent Smith a new PCA, the parties began working with each other in February 2022 and that Decor Group "compensated RCL pursuant to the Financial Terms agreed upon by the parties." *Id.*

Decor Group contends that, on or around July 1, 2022, Diehl contacted Kevin Wilham, who at that time was serving as Decor Group's chief financial officer, requesting a copy of the signed PCA. *See id.* at 4-5. Decor Group alleges that, "by Diehl's representation that her and Smith agreed to the PCA" and under the mistaken belief that Smith had approved the IP terms, Wilham signed a draft of the PCA that included the allegedly disputed IP terms and sent it to Diehl. *Id.* at 5. Diehl then signed the PCA, returned it to Wilham, and asked him to put the finalized PCA in her employee file. *See id.* at 6.

Decor Group avers that, during an end-of-the-year audit, its new CFO discovered the signed PCA and informed Smith. *See id.* Smith then "confronted" Diehl and "reminded her that he never agreed to the IP Terms." *Id.* Diehl responded by informing Smith that "she believed the PCA is a mutually agreed contract." *Id.*

Decor Group subsequently sent Diehl a letter informing Diehl that the PCA is invalid, at which point Diehl and RCL responded by saying:

> The Decor Group has elected to terminate the only agreement providing The Decor Group a license to the products and their designs. The Decor Group will be putting [RCL] in a position to be forced to file for an injunction to prevent the shipment and sale of the products this year.... This letter is providing formal notice that by doing so, The Decor Group will be engaging in willful infringement and misconduct.

*Id.* (emphasis omitted).

On March 10, 2023, Decor Group filed its complaint, asking the Court to: (1)

declare, under the Federal Declaratory Judgment Act ("FDJA"), 28 U.S.C. §§ 2201 and 2202, that RCL and Diehl possess no intellectual property rights under the PCA; (2) issue an order, under the FDJA, rescinding the PCA; and (3) reform the contract and excuse Decor Group from the IP terms included in the PCA. Dkt. No. 1 at 1, 4-7.

RCL separately asserted a counterclaim against Decor Group for breach of contract. *See* Dkt. No. 9 at 6-7.

Diehl filed a motion to dismiss Decor Group's claims against her individually for lack of personal jurisdiction and for failure to state a claim on which relief could be granted. *See* Dkt. No. 7. The Court granted Diehl's motion to dismiss but permitted Decor Group to amend its complaint. *See* Dkt. No. 14.

Decor Group filed its amended complaint. Dkt. No. 15. The amended complaint asserted claims against RCL and against Diehl as RCL's alter ego. *See id.*

RCL then filed a motion to strike Decor Group's claims against Diehl, *see* Dkt. No. 16, which the Court granted for a lack of personal jurisdiction over Diehl, *see* Dkt. No. 20.

Decor Group has not sought or been granted leave to further amend its pleadings, and the deadline to do so (February 21, 2024) has passed. *See* Dkt. No. 27 at 2. And, on August 22, 2024, RCL filed its Motion for Partial Summary Judgment [Dkt. No. 36].

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511

(5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable

inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

"[W]hen the moving party has carried its burden under [Federal Rule of Civil Procedure] 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*,

767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a

finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

### I.    <u>Subject matter jurisdiction</u>

Diversity jurisdiction under 28 U.S.C. § 1332 is the only basis for federal subject matter jurisdiction that Plaintiff Decor Group invokes in its amended complaint. *See* Dkt. No. 15.

The United States Court of Appeals for the Fifth Circuit recently explained that, in a diversity case under 28 U.S.C. § 1332,

- "[a]t the pleading stage, the party invoking the federal court's jurisdiction must allege the citizenship of each" party;

- "[a]t the summary judgment stage," the party invoking the federal court's jurisdiction "must provide evidence sufficient to support a jury finding of the citizenship of" each party; and,

- "at trial," the party invoking the federal court's jurisdiction "must prove the citizenship of each" party.

*Megalomedia Inc. v. Philadelphia Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024) (published order); *accord J.A. Masters Invs. v. Beltramini*, 117 F.4th 321, 323 (5th Cir. 2024) (published order); *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 315 n.* (5th Cir. 2019).

The Fifth Circuit has also long held that district courts can and should do their own fact-finding and final determinations on their subject-matter jurisdiction over a case at any stage, including before summary judgment. *See Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010) ("Judges have the power to resolve certain threshold issues without the participation of a jury before the adjudication of a case on its merits. For example, when subject matter jurisdiction over a case turns on disputed facts, judges have the power to resolve these disputes in assuring themselves of their courts' jurisdiction."); *Edwards v. Associated Press*, 512 F.2d 258, 262 n.8 (5th Cir. 1975) ("Consideration of affidavits and, where necessary, the taking of testimony are appropriate means for resolving jurisdictional disputes."). And, when district courts determine "the existence of subject matter jurisdiction in fact," the courts do not

proceed under the strictures, burdens, or standards that apply to motions under Federal Rules of Procedure 12(b)(6) and 56, such as attaching "presumptive truthfulness … to [a] plaintiff's [or removing defendant's] allegations." *Chatham Condo. Associations v. Century Vill., Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979) (cleaned up). A district court is instead "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case"; "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims"; and the party invoking the federal court's jurisdiction "will have the burden of proof that jurisdiction does in fact exist." *Id.* (cleaned up).

And, so, to comply with this governing law, Decor Group must provide evidence sufficient to support a jury finding of the citizenship of each party or for the Court to evaluate and determine on its own the citizenship of each party.

For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of every state in which it has been incorporated and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

Decor Group alleges that it is a Texas based corporation with its principal place of business located in Texas and that Defendant RCL is an Oregon based Corporation with its principal place of business located in Oregon. *See* Dkt. No. 15 at 2. And, so, Decor Group alleges that it is a citizen of Texas and that RCL is a citizen of Oregon.

To support its own citizenship allegations, Decor Group provides information from the Texas Secretary of State, which shows that Decor Group is incorporated in

Texas and that its principal place of business is located at 2301 Crown Court, Irving, Texas, 75038. *See* Dkt. Nos. 48-1 & 48-2.

And, to support RCL's citizenship allegations, Decor Group provides information from the Oregon Secretary of State, which shows that RCL is incorporated in Oregon and that its principal place of business is located at 130 SW Dickinson Lane, Portland, Oregon, 97219. *See* Dkt. No. 48-3.

The Court finds that Decor Group is a citizen of Texas and RCL is a citizen of Oregon and that Decor Group has satisfied its burden of proof regarding the citizenship of the parties remaining in this action.

## II.    Decor Group's claims fail as a matter of law because they are premised on claims of fraud that are not properly before this Court.

In its motion for partial summary judgment, RCL seeks to extinguish Decor Group's claims that seek (1) declaratory relief to the effect that RCL has no rights to the IP while the PCA was in effect; (2) declaratory relief to the effect that the PCA should be rescinded; and (3) reformation of the PCA. *See* Dkt. No. 37 at 9.

In response, Decor Group argues that there is a genuine issue of material fact as to whether (1) the signing of the executed PCA that transferred IP rights was fraudulently procured; (2) rescission based on fraud and misrepresentation is proper as a matter of law; and (3) reformation of the PCA based on Decor Group's mistake accompanied by fraud and inequitable conduct of Diehl is a valid claim as a matter of law. *See* Dkt. No. 40 at 2.

Specifically, Decor Group alleges that Diehl fraudulently induced Wilham to sign the PCA that included the IP terms by misrepresenting to him that Smith

-12-

approved the terms of the PCA (including the transfer of IP rights to RCL) and that a signed PCA, which Diehl was unable to find, already existed. *See id.* at 5-9.

In reply, *see* Dkt. No. 43 at 4, RCL asserts that Decor Group first raises its fraud and fraudulent inducement allegations in its response to RCL's motion for partial summary judgment, *see* Dkt. No. 40 at 5-9, and that Decor Group did not address such claims in its amended complaint, *see* Dkt. No. 15. And, so, RCL contends that Decor Group has "not properly pleaded any variation of fraud, and thus, has no viable basis in support of its [claims] which seeks declaratory relief[,] rescission, and reformation." Dkt. No. 43 at 2.

The Court agrees that each of Decor Group's claims fail as a matter of law because they are premised on claims of fraud that are not properly before this Court. *See Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073 (5th Cir. 1990) (because plaintiff did not raise a claim in their amended complaint and only in response to defendant's motion for summary judgment, it was not properly before the court).

## A. Rescission

Under Texas law, "[r]escission is an equitable remedy that operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or for some other reason to avoid unjust enrichment." *Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 611 (N.D. Tex. 2006) (citing *Martin v. Cadle Co.*, 133 S.W.3d 897, 903 (Tex. App. – Dallas 2004, pet. denied)). And rescission is a remedy, not a freestanding cause of action. *See Kennebrew v. Harris*, 425 S.W.3d 588, 595 (Tex. App. – Houston 2014, pet. denied) ("Because rescission is a remedy, it is

available only if the other party to the contract has committed some wrong.").

In its response to RCL's motion for partial summary judgment, Decor Group contends that it "has presented sufficient facts to support its request for a rescission of the [PCA] based on fraud and misrepresentation by Diehl creating a genuine issue of material fact." Dkt. No. 40 at 6.

But "[a] claim which is not raised in the complaint but, rather, is raised only in opposition to a motion for summary judgment is not properly before the court.'" *Med-Cert Home Care, LLC v. Becerra*, No. 3:18-cv-2372-E, 2023 WL 6202050, at *10 (N.D. Tex. Sept. 21, 2023) (citing *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)); *see also Pittman v. U.S. Bank NA*, 840 F. App'x 788, 789-90 (5th Cir. 2021) ("Our precedent precludes a plaintiff from advancing a new claim or reframing a previously presented one in response to a motion for summary judgment." (cleaned up)); *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (district court did not abuse its discretion in declining to consider "new factual allegations and theories of liability not present in the pleadings").

And, as this Court has previously recognized, Decor Group has never properly pleaded a claim for fraud against RCL. *See* Dkt. No. 20 at 13 ("Although [Decor Group] alleges in its opposition to RCL's motion [to strike] that Diehl committed fraud, this contention, for a second time, is not properly before the Court.").

In his October 2023 Memorandum Opinion and Order regarding RCL's motion to strike Decor Group's claims against Diehl, the then-presiding judge, Senior United

States District Judge A. Joe Fish, stated:

> [Decor Group] argues, again for the first time in its opposition (but not its complaint), that Diehl fraudulently induced Wilham into signing the PCA. [Decor Group's] complaint, however, omits the term "fraud" and its elements entirely. While it avers that misrepresentations and false statements led Wilhem to "believe" that the whole of the PCA had been signed, these statements, by themselves, do not organically birth a cause of action of fraud.

*Id.* (citations omitted).

The Court had previously granted Decor Group's request for leave to amend to correct deficiencies in its original complaint. *See* Dkt. No. 14 at 23-24. And Decor Group filed its amended complaint, *see* Dkt. No. 15, which Judge Fish refers to in his order, *see* Dkt. No. 20.

But, since the filing its amended complaint and Judge Fish's subsequent order, Decor Group has not sought or been granted leave to amend its pleadings to include claims for fraud or fraudulent indument against RCL. Rather, Decor Group states the elements required for a fraud claim to justify rescission for the first time in its summary judgment response. *See* Dkt. No. 40 at 6.

And, so, Decor Group's request for the Court to rescind the PCA cannot be justified by unpleaded fraud allegations not properly before the Court. *Accord Cutrera* 429 F.3d at 113. And RCL is entitled to summary judgment dismissing Decor Group's claim for rescission.

### B. Reformation

Under Texas law, "[i]n order to be entitled to reformation of an agreement, a

party must plead either mutual mistake or unilateral mistake accompanied by fraud or other inequitable conduct by the other party." *Liu v. Yang*, 69 S.W.3d 225, 229 (Tex. App. 2001) (Tex. App. – Corpus Christi 2001, no pet.) (cleaned up).

And, so, "[w]here there has been a mistake by one party, accompanied by fraud or other inequitable conduct of the remaining party, the instrument may be made to conform to the agreement or transaction entered into, according to the intention of the parties." *Assistmed, Inc. v. Conceptual Health Sols., Inc.*, No. 3:05-cv-880-D, 2006 WL 3691003, at *15 (N.D. Tex. Dec. 14, 2006) (quoting *Ace Drug Marts, Inc. v. Sterling*, 502 S.W.2d 935, 939 (Tex. Civ. App. 1974, writ ref'd n.r.e.) (cleaned up).

As RCL points out, Decor Group fails to allege in its amended complaint that the PCA was the result of mutual mistake. *See* Dkt. No. 37 at 17. And, so, Decor Group relies on its argument that reformation is justified by unilateral mistake accompanied by fraud and/or inequitable conduct in the form of Diehl fraudulently procuring the signed PCA. *See* Dkt. No. 40 at 8-9.

But, as discussed above, Decor Group's amended complaint fails to plead the elements of fraud in conjunction with its reformation claim. *See* Dkt. No. 15. Rather, Decor Group advances this claim for the first time in its summary judgment response. *See* Dkt. No. 40 at 8-9.

And, so, Decor Group's request for the Court reform the PCA also fails because it is premised on unpleaded fraud allegations that are not properly before the Court. *Accord Cutrera* 429 F.3d at 113. And RCL is entitled to summary judgment dismissing Decor Group's claim for reformation.

### C. Declaratory Relief

The FDJA allows a federal court to declare the rights and legal relations of an interest party. *See* 28 U.S.C. §§ 2201-2202; *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 769 (N.D. Tex. 2012). But a declaratory judgment's availability "presupposes the existence of a judicially remedial right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). The FDJA is a procedural device that creates no substantive rights. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937).

And, so, the FDJA provides no relief unless there is a justiciable controversy between the parties. *See id.* A plaintiff must therefore allege a "substantial and continuing" controversy, which the Fifth Circuit has likened to the Article III standing requirement of an existing case or controversy. *See Bauer v. Tex.*, 341 F.3d 352, 358 (5th Cir. 2003). "The [p]laintiff must allege facts from which the continuation of the dispute may be reasonably inferred." *Id.* And, further, a request for declaratory judgment is remedial in nature and dependent upon the assertion of viable causes of action. *See Naddour v. Nationstar Mortg.*, LLC, No. 3:11-cv-1096-B, 2012 WL 4473127, at *7 (N.D. Tex. Sept. 27, 2012).

Decor Group seeks a declaration that RCL has no IP rights under the PCA. *See* Dkt. No. 15 at 6-7. It argues that the entire PCA, including the terms granting RCL IP rights, is unenforceable because the signed PCA was procured by Diehl's fraud and misrepresentation. *See* Dkt. No. 40 at 5.

But, as discussed above, Decor Group's amended complaint fails to plead fraud, and Decor Group raises this argument in conjunction with the enforceability of the

PCA for the first time in in its summary judgment response. *See* Dkt. No. 40 at 5; *see generally* Dkt. No. 15.

And, so, the claim that the PCA is invalid because the signed PCA was procured by Diehl's fraud and misrepresentation is not properly before the Court. *Accord Cutrera*, 429 F.3d at 113.

And, because Decor Group has not asserted any viable underlying cause of action for which a declaratory judgment is appropriate, RCL is entitled to summary judgment dismissing Decor Group's declaratory judgment claim.

### III.    <u>The Court denies leave to amend.</u>

To the extent Decor Group contends that this Court should construe its unpleaded fraud claim as a motion to amend its amended complaint, the Court denies Decor Group's constructive request for leave to amend.

The Fifth Circuit has at times instructed that, "when a claim is raised for the first time in a response to a summary judgment motion, the district court should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a)." *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010) (cleaned up).

But Rule 16(b)(4)'s good cause standard applies to requests to amend a deadline imposed by the Court under Rule 16(b) and therefore "governs [requests to amend] pleadings after a scheduling order deadline has expired." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003) ("Only upon the movant's demonstration of good cause to modify the scheduling order will the

more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave.").

This "good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Banks v. Spence*, 114 F.4th 369, 371 (5th Cir. 2024) (cleaned up; quoting *S&W Enters.*, 315 F.3d at 535).

Here, the Court set February 21, 2024 as the deadline to move for leave to amend pleadings. *See* Dkt. No. 27 at ¶ 2 (explaining that, under Federal Rule of Civil Procedure 15(a), "[t]he Court generally will grant a timely-filed motion for leave to amend as a matter of course absent a showing of undue prejudice or futility" but that, under Federal Rule of Civil Procedure 16(b)(4), "[n]o amendments will be allowed after this deadline except on a showing of good cause"). And, so, Rule 16(b)(4) governs.

The February 21, 2024, deadline for the parties to move for leave to amend their pleadings has passed. And, after filing its amended complaint on July 8, 2023, Decor Group never sought leave to amend its pleadings in a separate motion.

And, assuming Decor Group moved for leave to amend in its summary judgment response, it has not offered any justification or good cause as to why further amendments should be allowed at this point, more than six months after the deadline set forth in the Court's Initial Scheduling Order.

And, so, the Court denies any constructive request for leave to amend.

## Conclusion

The Court GRANTS RCL's Motion for Partial Summary Judgment [Dkt. No.

36] and dismisses with prejudice all of Decor Group's claims.

       SO ORDERED.

       DATED: December 5, 2024

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE